UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE RIERA, an individual;<br><br>　　　　　　　　Plaintiff,<br>vs.<br><br>CENTRAL WASHINGTON UNIVERSITY;<br>JAMES WOHLPART, an individual; RUTH<br>ERDMAN, an individual<br><br>　　　　　　　　Defendants. | CASE NO. _____<br><br><br>COMPLAINT FOR DAMAGES<br><br>*REQUEST FOR JURY* |

Plaintiff Jose Riera, alleges as follows:

## I.　**SUMMARY OF CLAIM**

1.　This is a civil rights, wrongful termination, defamation and outrage action in which the plaintiff alleges that the defendants retaliated against him for reporting what he reasonably believed to be a person in distress on the campus of Central Washington University.　The defendants further defamed plaintiff by publicly accusing him of being a racist.　This conduct has caused the plaintiff to suffer harm, including extreme emotional distress.

COMPLAINT FOR DAMAGES- 1



700 E. Mountain View Ave., Suite 508<br>Ellensburg, WA 98926<br>www.bpelaw.com<br>509-245-0400

## II.    PARTIES

2.    **Plaintiff Jose Riera** ("Riera") is an individual, a citizen of the United States, and resides in Catawba County, North Carolina.

3.    **Central Washington University** ("CWU") is a public institution of higher education established by RCW 28B.    CWU is governed by a seven-member board of trustees, appointed by the governor. The board employs a president, who acts as the chief executive officer of the institution. The president establishes the structure of the administration.

4.    **Defendant James Wohlpart** ("Wohlpart") is an individual, citizen of the United States, and resides in Kittitas County in the State of Washington.    Wohlpart is an employee and President of CWU in Ellensburg, Washington.

5.    **Defendant Ruth Erdman** ("Erdman") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington.    Erdman is an employee of CWU in Ellensburg, Washington.

## III.    JURISDICTION AND VENUE

6.    This Court has diversity jurisdiction over this matter pursuant to 28 USC §1332, as the parties are diverse and the amount in controversy exceeds $75,000.    Venue is proper in this court as the events giving rise to this claim took place in Kittitas County Washington.

7.    On April 23, 2024, Riera gave CWU notice of this claim.    The waiting period to file a civil action has since expired.

## IV.    FACTUAL ALLEGATIONS

8.    On the date of the incident alleged herein, Riera was employed by CWU as a fixed-term, non-tenure track faculty position in the college of Education and Professional Studies, department of Information Technology and Administrative Management.

COMPLAINT FOR DAMAGES- 2

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

9.    At 9:30 am on Monday April 1, 2024, Riera was walking north on campus between Kamola Hall and the Milo Smith Tower Theater toward his office in Samuelson Hall. There was a person some distance in front of him who was walking east toward Samuelson Hall. Although he could not see the person's face, Riera inferred that the person was a woman likely based upon her composition and stature.

10.   The woman appeared to be disoriented/confused and struggling to maintain her balance. She was wearing loose fitting pajama-like pants and a large overcoat. Her head and shoulders were wrapped in a blanket/large scarf. From the side, Riera could see that the woman was wearing heavy glasses. Riera inferred that they were sunglasses – though he only saw them from the side and did not see the lenses from the front. Any reasonable and compassionate person in Riera's position would conclude that the woman was in distress and likely in need of assistance.

11.   CWU has policies governing campus safety and operates under the "if you see something, say something" rule:

CWUP 2-40-240 provides:

> Central Washington University is committed to the safety and security of students, faculty, staff and visitors in all buildings and grounds owned, leased and/or operated by CWU. It safeguards the campus community and facilities *by identifying conditions or circumstances that may pose risk*, and establishes reasonable practices that support a safe and secure environment. All faculty, staff, students and other members share responsibility for the safety and security of the institution and must conduct university activities and operations in compliance with applicable federal and state regulations and other university policies (emphasis added).

CWUP 2.35-075 provides:

> Faculty, staff, and students are *encouraged* to report behaviors of concern or other complaints or issues through official internal reporting channels so that they may be responded to in a consistent manner and at the appropriate level (emphasis added). . . .

COMPLAINT FOR DAMAGES- 3

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

> (4)(1) All university personnel are *encouraged* to contact CWU Police Services for immediate response and assistance (emphasis added). . .

The CWU Campus Police webpage states:

> Get assistance from a colleague and ***call 911 immediately*** if there is any doubt about your safety or the safety of those around you (emphasis added).

12. Riera was reasonably and understandably concerned for the woman's welfare and called the campus police.

13. Officer Mackenzie Erickson ("Officer Erickson") responded to Samuelson Hall and saw a woman matching the description given by Riera sitting in the lobby.   Officer Erickson was wearing a body cam from which the following images were taken:

 

14. Officer Erickson advised the woman that she was called to check on her welfare asked her to produce identification.   The woman complied and her identification revealed her to be Bobby J. Cummings ("Cummings"), an 80-year-old, blind African American professor and current Director of CWU's Africana and Black Studies program.   Prior to that morning, Riera had not heard of Cummings nor could he recall having ever seen her

COMPLAINT FOR DAMAGES- 4

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

on campus.   When he reported his concern to campus police, he had no idea of her race or ethnicity.

15. Cummings told Officer Erickson that she had walked from downtown and was resting in Samuelson Hall before continuing on to her office in Michaelsen Hall.   Officer Erickson offered to give Cummings a ride to Michaelsen Hall, but Cummings declined.  Officer Erickson then called Riera and advised him that the woman he described was Professor Cummings and that she was okay.   Riera was relieved and thought nothing further about the matter.

16. Cummings, on the other hand, was furious that she had been mistaken for someone in need of assistance.   She investigated the identity of the caller and learned that it was Riera.  She reported the incident to defendant Wohlpart, CWU's President.  Cummings claimed that Riera engaged in racial profiling and that she was the victim of racial bias. Wohlpart instructed Lucida Carnell ("Carnell"), CWU's Interim VP of the Office of Diversity, Equity and Inclusivity ("DEI"), to meet with Riera to find out what happened.

17. At 2:48 pm Carnell emailed Riera and asked if he was available to "chat."   Carnell did not disclose the purpose of the meeting, and Riera assumed that it had to do with DEI activities in which they were both involved.  The two met at 3:30 pm at Riera's office. However, Carnell did not ask Riera what happened that morning or for the circumstances that caused him to call the campus police.  Rather, Carnell accused Riera of engaging in racial profiling and urged him to prepare an apology to Cummings.

18. Riera was stunned by the accusation.   First, Riera had no information regarding Cummings' race or ethnicity at the time he called the campus police.  Second, Riera is himself a minority (Latino) and is deeply committed racial equality and academic inclusion.  In fact, Riera is well known as an advocate for underserved communities.

COMPLAINT FOR DAMAGES- 5

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

19. Being accused of racial profiling caused Riera to experience immediate and extreme anxiety. He was defending himself against allegations of conduct that he finds morally repugnant and is personally and professionally committed to eradicating.

20. Reeling from Carnell's accusations, Riera gathered his belongings and walked to the classroom of an evening course he was teaching. While setting up his lecture materials, Riera overhead a student discussing what was described as a horrible racial profiling event earlier that day in Samuelson Hall. At that point, Riera knew that word was circulating that there was a racist in their midst and that it was only a matter of time before Riera's name was attached to the alleged profiling. By the time class was over, Riera was overcome with stress and anxiety. He called his mental health provider and arranged for an appointment the following day.

21. At 4:00 pm on the following afternoon, Carnell emailed Riera and asked if it would be possible to have a "follow up meeting." Riera responded the following morning as follows:

> Good morning and thank you for your message, Lucinda.
> Our conversation on Monday afternoon left me shaken and traumatized, especially given my dedication to serving others with care and respect, as you kindly acknowledged.
> To ensure my emotional well-being, I would appreciate it if you could please share the purpose of this meeting beforehand.
> Respectfully yours, Jose

Carnell responded at 12:35 pm as follows:

> Thank you for getting back to me. And for your willingness to engage in difficult conversations on Mon. with thoughtfulness, empathy, and compassion. My goal is I am having [sic] multiple conversations across campus in helping to mitigate what happened on Mon. So to help all those involved and [sic] a short follow up would assist with that process.

22. The tone of Carnell's email revealed that CWU had no intention of investigating the facts of the incident or the veracity of Cummings' horrible accusations. CWU had already identified Riera as its sacrificial lamb.

COMPLAINT FOR DAMAGES- 6

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

23. At 3:10 pm on April 3, 2024, CWU held a faculty senate meeting[1]. The Senate meeting streamed live and recorded copies were publicly available on the university's website. At the meeting Wohlpart made the following statement:

> I do want to take a moment to address a really unfortunate, and I would say, unacceptable incident that occurred to one of our most esteemed faculty and colleagues. And when I heard about this incident the first thing Monday morning, Lucinda, I asked her to be engaged – meet with the faculty member to understand what occurred, keep me posted on how I, as president, we as an institution could assist and respond to the situation. What I know is that, any of that – all of that – won't undo the harm that occurred. And I do also know that this was harm upon -- being perpetuated. A few of you reached out to me and suggested that this incident should be discussed with community policing task force, which we will pass along. Some of you have offered suggestions about what we might be thinking about differently, I've passed that on to the task force. But even then, even as we learn and grow from this incident, the harm remains. Somehow we have the [inaudible] to stop. I do appreciate all the work that Lucinda has done as we determine how to respond. I'm deeply sorry.

24. Defendant Erdman is a senator who attended the faculty senate meeting and took the minutes. Erdman's minutes elaborated on Wohlpart's statement as follows:

> **Welcome to the Deep South, Circa 1935** 🙁
> Without naming names or describing the incident, Wohlpart expressed his outrage at a recent unconscionable incident on campus.
> From my own knowledge, I think I can tell you the basics: It was an incident of blatant racial profiling. Campus police were called because a person of color was sitting quietly in the lobby of a CWU building for a brief interval. The person turned out to be a highly distinguished faculty member—but was compelled to produce and show ID before being left in peace.
> (I must remark that this is outrageous on multiple levels. All CWU buildings are public; they belong to the State of Washington and its people. *Anyone* may sit in the lobby of any of our buildings. There was no reason at all to call the police—except, I guess, that this was a person of color.)
>
> Wohlpart called the incident "unacceptable" and said that Central is working to see to it that such a thing doesn't happen again on our campus.

25. Erdman emailed her "Deep South" summary to all CWU faculty members.

---

[1] The faculty senate is a group of representatives from each academic department who meet for the purpose of ensuring that university faculty have a voice in CWU governance. Each academic department elects 1-4 senators, to represent its interests. Wohlpart attends all senate meetings.

COMPLAINT FOR DAMAGES- 7

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

26. By this time, Riera's anxiety was acute. At the recommendation of Dr. Emily Faust, Riera's psychologist, Riera applied for medical leave.

27. On April 5, 2024, CWU approved Riera's request for medical leave based upon Dr. Faust's findings that Riera was suffering from "acute stress/mental health symptoms causing significant functional impartment at work, home and socially."

28. At approximately 4:15 pm, that afternoon, Charlene Andrews ("Andrews"), an employee in the Office of the Provost, called Riera and advised that he was being placed on paid administrative leave pending an investigation by the Office of Civil Rights Compliance into the incident on the morning of April 1, 2024. Andrews further advised Riera that a decision was made to preclude Riera from being on university property pending the investigation and that Riera should remain at home for his "own physical well-being."

29. Immediately after the call, Andrews emailed Riera a letter authored by Sathy Rajendran ("Rajendran"), the Dean of the College of Education and Professional Studies. In the letter, Rajendran stated:

> This is to notify you that I am placing you on paid administrative leave, effective today, April 5, 2024, pending an inquiry into the incident that occurred Monday, April 1, 2024.
>
> This inquiry will be conducted by the Office of Civil Rights Compliance and Title IX and is of a **confidential** nature. While this inquiry is taking place, we ask that you not discuss it with students, staff, or faculty. You may discuss it with your union representative, the investigator(s), or Faculty Relations. Any unauthorized communications with others regarding this matter, or any communication or actions reasonably perceived as retaliatory, could serve as independent grounds for disciplinary action, including termination.
>
> You will remain on paid home assignment until further notice. While on home assignment, you are not to access University premises unless scheduled in advance with Faculty Relations. You are expected to remain available to my office, the investigator(s), and the University during your regularly scheduled hours (emphasis original).

COMPLAINT FOR DAMAGES- 8

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

30. On April 8, 2024, CWU sent out a public notice that Riera was on short-term leave and that his classes were temporarily cancelled. One hour later, at 10:20 am, Wohlpart sent the following email message to all CWU faculty, staff and students:

> This last week, our journey to become a model learning community of equity and belonging was tested with an incident that has launched a broader conversation about how our words become action on our campus.
>
> That incident, between one of our most esteemed colleagues and CWU Police, has been the subject of conversation and concern. The police were responding to a call from another employee and determined that no police involvement in the incident was necessary. I want to reassure the campus community that CWU is working with everyone involved to best ensure that they feel safe and supported on campus. This event calls upon us as a community to critically reflect on processes and actions that may keep us from living into the fullest expression of our vision, mission, and values.
>
> I will be asking our Community Policing Task Force, which has staff, faculty, and student representation, to review what occurred and provide recommendations for how we can learn from this incident. In addition, our Office of Civil Rights Compliance will conduct an inquiry into the initial call.
>
> As a university, we will be placing a stronger emphasis on bias training. While this work will help us live more fully into our vision and mission, we deeply regret the incident and its impact on our colleague and university community.

31. At no time did Wohlpart or any other CWU representative ask Riera for his version of events. No interviews were conducted. No investigation took place. CWU was not interested in the truth but, rather, the opportunity to leverage the incident to advance its standing among diversity and inclusivity groups. It did so by ratifying rumor mill gossip, fanning the flames of racial division, and identifying Riera as the catalyst while publicly proclaiming its abhorrence for such conduct.

32. The accusations against Riera spread through the small academic community quickly. Riera received messages from those who know him expressing their sympathy about the baseless nature of the allegations. However, in this era of social media, the vast majority

COMPLAINT FOR DAMAGES- 9

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

of the comments were from those who do not know Riera. And they were not as kind. In these posts, Riera was called "an asshole" and "a fascist" – amongst other unflattering descriptors. Ironically, at least one posting disparaged Riera's ethnicity, calling him a "coconut Mexican." Several news outlets reported the story of Riera's alleged racial profiling.

33. Riera was terrified to appear publicly in Ellensburg for fear of public humiliation and potential violence. Riera temporarily stayed with friends and family outside of Ellensburg, returning only to attend medical appointments. After he returned to Ellensburg, Riera did not feel safe shopping or attending local church services and traveled to Yakima for such activities. Riera has since moved to North Carolina.

34. At the time Riera was placed on administrative leave, he was performing all of the essential functions of his job.

## V.     FIRST CAUSE OF ACTION
### Wrongful Termination of Employment Agreement
#### *Against CWU*

35. Riera incorporates by reference the allegations set forth in paragraphs 1 through 34 as though set forth in full.

36. Riera's employment at CWU was subject to a collective bargaining agreement between CWU and United Faculty of Central/UFC. Article 26 of the bargaining agreement governs employee discipline and specifically states:

> Faculty shall be disciplined or discharged ***only for just cause*** (emphasis added).

Paragraph 26.6 of the collective bargaining agreement further provides:

> Faculty ***shall be*** given a reasonable opportunity to respond to allegations which could result in discipline. Before any investigatory interview, a faculty member will be informed of the nature of the matter or allegations in sufficient detail to reasonably apprise them of the matter, unless such notice would endanger the investigation. . .(emphasis added).

COMPLAINT FOR DAMAGES- 10

BPE LAW GROUP
A PROFESSIONAL CORPORATION

700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

37. Appendix E to the collective bargaining agreement sets forth the guidelines for a just cause investigation.   Part three of the guideline asks:

> Did the Employer, ***before administering the discipline to the employee***, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management? (emphasis added)

38. Riera was placed on administrative leave without just cause.  Riera was not given a hearing or any opportunity to confront the accusations against him prior to the time he was placed on administrative leave.   These failures constitute breaches of the collective bargaining agreement.

39. As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

## VI.    SECOND CAUSE OF ACTION
### Wrongful Termination - Retaliation for Report of Safety Concern
*Against CWU*

40. Riera incorporates by reference the allegations set forth in paragraphs 1-39 as though set forth in full.

41. It is unlawful and in violation of public policy to take adverse action against an employee for engaging in conduct that constitutes the performance of a public duty.   Riera was performing a public duty when he notified the campus police of a possible vulnerable person potentially in need of assistance.   CWU placed Riera on administrative leave because he engaged in such public duty.

42. As a direct and proximate result of such conduct, Riera has suffered harm.

## VII.    THIRD CAUSE OF ACTION
### Wrongful Termination - Retaliation for Participating in Family Leave Benefits
*Against CWU*

43. Riera incorporates by reference the allegations set forth in paragraphs 1-42 as though set forth in full.

44. Riera is entitled to job protection while availing himself of benefits and protections of the Family Medical Leave Act ("FMLA").   On April 5, 2024, Riera's request for FMLA

COMPLAINT FOR DAMAGES- 11



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

leave was granted based upon the report of Dr. Emily Faust.   CWU retaliated against Riera for taking FMLA leave by thereafter placing him on administrative leave. While on medical leave, CWU gave Riera an unfavorable performance review and placed it in his personnel file.

45. As a direct and proximate result of the foregoing, Riera has suffered harm.

### VIII.    FOURTH CAUSE OF ACTION
**Violation of 42 USC §1983 - Deprivation of Right to Free Speech**
*Against CWU*

46. Riera incorporates by reference the allegations set forth in paragraphs 1-45 as though set forth in full.

47. Riera's employment at CWU was a valuable government benefit or privilege.   The first amendment constrains the right of a public employer to take adverse action against a public employee as punishment for speaking out on a matter of public concern.  Issues involving public safety are a matter of public concern.

48. Riera's report of a vulnerable person on campus was matter of public concern and in the states' interest of public safety.

49. As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

### IX.    FIFTH CAUSE OF ACTION
**Violation of 42 USC § 1983 - Deprivation of Due Process Liberty Interest**
*Against CWU*

50. Riera incorporates by reference the allegations set forth in paragraphs 1-49 as though set forth in full.

51. Riera's employment at CWU was a valuable government benefit or privilege. Riera has a liberty interest in his good name, reputation, honor, and integrity.   CWU deprived Riera of this liberty interest when it publicly accused him of racial profiling, thereby impugning his character without first granting the opportunity to address the accusations and clear

COMPLAINT FOR DAMAGES- 12

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

his name.  The accusations were stigmatizing, substantially false and made in connection with the decision to place Riera on administrative leave.

52. As a direct and proximate result of such conduct, Riera has suffered harm.

## X.     SIXTH CAUSE OF ACTION
### Violation of 42 USC §1983 - Deprivation of Due Process Property Interest
*Against CWU*

53. Riera incorporates by reference the allegations set forth in paragraphs 1-52 as though set forth in full.

54. Riera's employment at CWU was a valuable government benefit or privilege. As an employee of CWU, and pursuant to the terms of the collective bargaining agreement, Riera had a property interest in his continued employment.

55. CWU deprived Riera of this property interest by placing Riera on administrative leave in violation of Article 26 of the collective bargaining agreement without a hearing.

56. As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

## XI.     SEVENTH CAUSE OF ACTION
### Defamation
*Against CWU, Wohlpart and Erdman*

57. Riera incorporates by reference the allegations set forth in paragraphs 1-56 as though set forth in full.

58. CWU, Wohlpart and Erdman knowingly and with malicious and/or reckless disregard of its veracity, disseminated to the public false, unprivileged statements about Riera.

59. As a direct and proximate result of such conduct, Riera has suffered harm.

## XII.     EIGHTH CAUSE OF ACTION
### Outrage
*Against CWU, Wohlpart and Erdman*

60. Riera incorporates by reference the allegations set forth in paragraphs 1-59 as though set forth in full.

COMPLAINT FOR DAMAGES- 13



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

61. The conduct alleged herein is extreme and outrageous and carried out intentionally or with reckless disregard for the consequences.

62. As a direct and proximate result of this conduct, Riera has suffered harm, including extreme emotional distress.

### **PRAYER FOR RELIEF**

WHEREFORE, Riera prays for the following relief:

1. Judgment in favor of Riera all causes of action;

2. An award of general and special damages in an amount to be proven at the time of trial;

3. An award of punitive and statutory damages as permitted by law;

4. An award of attorneys' fees and costs as permitted by law, including 42 USC §1983; 42 USC §1988; RCW 49.60 and RCW 49.48.

5. An award of pre-judgment interest;

6. An order that all negative material be removed from Riera's CWU personnel file; and

7. All such further relief as the court deems just and proper.

Dated: September 20, 2024          BPE Law Group

By: _____
Erica A. St. Louis WSBA #28793
*Counsel for Riera*

COMPLAINT FOR DAMAGES- 14

BPE LAW GROUP
A PROFESSIONAL CORPORATION
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400