1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE RIERA, an individual;<br><br>                    Plaintiff,<br><br>vs.<br><br>CENTRAL WASHINGTON UNIVERSITY; JAMES WOHLPART, an individual; RUTH ERDMAN, an individual; LUCINDA CARNELL, an individual; SATHYANARAYANAN RAJENDRAN; an individual; JOHN MACARTHUR, an individual; BRIAN MCGLADREY; an individual; STACI SLEIGH-LAYMAN; an individual; and KURT KIRSTEIN; an individual,<br><br>                    Defendants. | CASE NO.   1:24-cv-03147-SAB<br><br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br><br><br><br>***REQUEST FOR JURY*** |

Plaintiff Jose Riera, alleges as follows:

## I.    <u>SUMMARY OF CLAIM</u>

1.     This is a civil rights, wrongful termination, defamation and outrage action in which the

plaintiff alleges that the defendants retaliated against him for reporting what he

FIRST AMENDED COMPLAINT FOR DAMAGES- 1



700 E. Mountain View Ave., Suite 508<br>Ellensburg, WA 98926<br>www.bpelaw.com<br>509-245-0400

reasonably believed to be a person in distress on the campus of Central Washington University.   The defendants further defamed plaintiff by publicly accusing him of being a racist.  This conduct has caused the plaintiff to suffer harm, including extreme emotional distress.

## II.    PARTIES

2.    **Plaintiff Jose Riera** ("Riera") is an individual, a citizen of the United States, and resides in Catawba County, North Carolina.  At the time of the events alleged herein, Riera was a professor at Central Washington University as a fixed-term, non-tenure track faculty position in the College of Education and Professional Studies, Department of Information Technology and Administrative Management.

3.    **Defendant Central Washington University** ("CWU") is a public institution of higher education established by RCW 28B.   CWU is governed by a seven-member Board of Trustees, appointed by the governor. The Board of Trustees employs the President of CWU, who also acts as its Chief Executive Officer.

4.    **Defendant James Wohlpart** ("Wohlpart") is an individual, citizen of the United States, and resides in Kittitas County in the State of Washington.  Wohlpart is an employee of CWU and serves as its President and Chief Executive Officer.  As President, Wohlpart is responsible overall operations of the university.  These responsibilities are governed by RCW 28B.35.390 and include an obligation to ensure that all laws and rules of the Board of Trustees are observed.  Ultimately, Wohlpart is responsible for ensuring that the actions of CWU are carried out in compliance with state and federal law, CWU polices and procedures and all applicable collective bargaining agreements.

5.    **Defendant Ruth Erdman** ("Erdman") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington.  Erdman is an employee of

FIRST AMENDED COMPLAINT FOR DAMAGES- 2

BPE LAW GROUP

700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

CWU, a senior lecturer in the English Department and member of the Faculty Senate, representing Non-Tenured Track Faculty.

6. **Defendant Lucinda Carnell** ("Carnell") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. Carnell is an employee of CWU and a professor in the Biological Sciences Department. At the time of the events alleged herein, Carnell was the Interim VP of the Office of Diversity, Equity and Inclusivity ("DEI"). As VP of DEI, Carnell was responsible for providing leadership in connection with the development and implementation of administrative and academic policies and procedures to enhance equity, reduce barriers and elimination of bias, in all its forms.

7. **Defendant Sathyanarayanan Rajendran** ("Rajendran") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. Rajendran is an employee of CWU and the Dean of the College of Education and Professional Studies, which includes the Department of Information Technology and Administrative Management. As Dean, Rajendran is the chief executive of the College of Education and all departments therein and is responsible for its management and operation. Ultimately, Rajendran is responsible for ensuring that the actions of College of Education and Professional Studies are carried out in compliance with state and federal law, CWU policies and procedures and all applicable collective bargaining agreements.

8. consistent state and federal law, the collective bargaining agreements and with CWU policies.

9. **Defendant John MacArthur** ("MacArthur") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. MacArthur is an employee of CWU and Director of the Office of Civil Rights Compliance. As Director, MacArthur's role is to ensure that CWU provides a learning and working environment that promotes personal integrity, civility and mutual respect and to ensure that the rights

FIRST AMENDED COMPLAINT FOR DAMAGES- 3



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

of all CWU community members are protected, consistent with state and federal law and CWU policies and all collective bargaining agreements.

10. **Defendant Brian McGladrey** ("McGladrey") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. McGladrey is an employee of CWU and is Chair of the Information Technology Management Department, within the College of Education and Professional Studies. As Chair, McGladrey is responsible for the day-to-day management and operations of the Information Technology Management Department. Ultimately, McGladrey is responsible for ensuring that the actions of the Department of Information Technology Management are carried out in compliance with state and federal law, CWU policies and procedures and all applicable collective bargaining agreements.

11. **Defendant Staci Sleigh-Layman** ("Sleigh-Layman") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. Sleigh-Layman is an employee of CWU and is Associate VP of Human Resources. As Associate VP, Sleigh-Layman is charged with ensuring that CWU's employment practices are in compliance with the collective bargaining agreements, state and federal law, as well as CWU policies and procedures.

12. **Defendant Kurt Kirstein** ("Kirstein") is an individual, a citizen of the United States, and resides in Kittitas County, in the State of Washington. Kirstein is an employee of CWU and the Associate VP for Academic Affairs. At the time of the events alleged herein, served as the Interim Provost. The Provost oversees the Deans of the individual colleges and represents them before the President and the Board of Trustees. As Provost, Kirstein was responsible for overseeing faculty evaluations and professional development and for ensuring that those activities are carried out consistent with state and federal law and the collective bargaining agreements. Ultimately, Kirstein was responsible for ensuring that

FIRST AMENDED COMPLAINT FOR DAMAGES- 4

the actions of Deans are carried out in compliance with state and federal law, CWU policies and procedures and all applicable collective bargaining agreements.

### III.     JURISDICTION AND VENUE

13.  This Court has diversity jurisdiction over this matter pursuant to 28 USC §1332, as the parties are diverse and the amount in controversy exceeds $75,000.  Venue is proper in this court as the events giving rise to this claim took place in Kittitas County Washington.

14.  On April 23, 2024, Riera gave CWU notice of this claim.  The waiting period to file a civil action has since expired.

### IV.     FACTUAL ALLEGATIONS

15.  At the time of the incident alleged herein, Riera was employed by CWU as a fixed-term, non-tenure track faculty position in the college of Education and Professional Studies, Department of Information Technology and Administrative Management.

16.  At 9:30 am on Monday April 1, 2024, Riera was walking north on campus between Kamola Hall and the Milo Smith Tower Theater toward his office in Samuelson Hall. There was a person some distance in front of him who was walking east toward Samuelson Hall.  Although he could not see the person's face, Riera inferred that the person was a woman likely based upon her composition and stature.

17.  The woman appeared to be disoriented/confused and struggling to maintain her balance. She was wearing loose fitting pajama-like pants and a large overcoat.  Her head and shoulders were wrapped in a blanket/large scarf.   From the side, Riera could see that the woman was wearing heavy glasses.  Riera inferred that they were sunglasses – though he only saw them from the side and did not see the lenses from the front.  Any reasonable and compassionate person in Riera's position would conclude that the woman was in distress and likely in need of assistance.

FIRST AMENDED COMPLAINT FOR DAMAGES- 5

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

18. CWU has policies governing campus safety and operates under the "if you see something, say something" rule:

CWUP 2-40-240 provides:

> Central Washington University is committed to the safety and security of students, faculty, staff and visitors in all buildings and grounds owned, leased and/or operated by CWU. It safeguards the campus community and facilities ***by identifying conditions or circumstances that may pose risk***, and establishes reasonable practices that support a safe and secure environment. All faculty, staff, students and other members share responsibility for the safety and security of the institution and must conduct university activities and operations in compliance with applicable federal and state regulations and other university policies (emphasis added).

CWUP 2.35-075 provides:

> Faculty, staff, and students are ***encouraged*** to report behaviors of concern or other complaints or issues through official internal reporting channels so that they may be responded to in a consistent manner and at the appropriate level (emphasis added). . . .

> (4)(1) All university personnel are ***encouraged*** to contact CWU Police Services for immediate response and assistance (emphasis added). . .

The CWU Campus Police webpage states:

> Get assistance from a colleague and ***call 911 immediately*** if there is any doubt about your safety or the safety of those around you (emphasis added).

19. Riera was reasonably and understandably concerned for the woman's welfare and called the campus police.

20. Officer Mackenzie Erickson ("Officer Erickson") responded to Samuelson Hall and saw a woman matching the description given by Riera sitting in the lobby. Officer Erickson was wearing a body cam from which the following images were taken:

FIRST AM... ...GES- 6




...uite 508

21. Officer Erickson advised the woman that she was called to check on her welfare asked her to produce identification.   The woman complied and her identification revealed her to be defendant Cummings, who is an 80-year-old, blind African American professor and current Director of CWU's Africana and Black Studies program.    Prior to that morning, Riera had not heard of Cummings nor could he recall having ever seen her on campus. When he reported his concern to campus police, he had no idea of her race or ethnicity.

22. Cummings told Officer Erickson that she had walked from downtown and was resting in Samuelson Hall before continuing on to her office in Michaelsen Hall.   Officer Erickson offered to give Cummings a ride to Michaelsen Hall, but Cummings declined.  Officer Erickson then called Riera and advised him that the woman he described was Professor Cummings and that she was okay.   Riera was relieved and thought nothing further about the matter.

23. Cummings, on the other hand, was furious that she had been mistaken for someone in need of assistance.   She investigated the identity of the caller and learned that it was Riera.  She reported the incident to defendant Wohlpart, CWU's President.   Cummings claimed that Riera engaged in racial profiling and that she was the victim of racial bias. Wohlpart instructed defendant Carnell (Interim VP of DEI) to meet with Riera to find out what happened.

FIRST AMENDED COMPLAINT FOR DAMAGES- 7

24. At 2:48 pm Carnell emailed Riera and asked if he was available to "chat."   Carnell did not disclose the purpose of the meeting, and Riera assumed that it had to do with DEI activities in which they were both involved.  The two met at 3:30 pm at Riera's office.  However, Carnell did not ask Riera what happened that morning or for the circumstances that caused him to call the campus police.  Rather, Carnell accused Riera of engaging in racial profiling and urged him to prepare an apology to Cummings.

25. Riera was stunned by the accusation.   First, Riera had no information regarding Cummings' race or ethnicity at the time he called the campus police.  Second, Riera is himself a minority (Latino) and is deeply committed racial equality and academic inclusion.  In fact, Riera is well known as an advocate for underserved communities.

26. Being accused of racial profiling caused Riera to experience immediate and extreme anxiety.   He was defending himself against allegations of conduct that he finds morally repugnant and is personally and professionally committed to eradicating.

27. Reeling from Carnell's accusations, Riera gathered his belongings and walked to the classroom of an evening course he was teaching.   While setting up his lecture materials, Riera overhead a student discussing what was described as a horrible racial profiling event earlier that day in Samuelson Hall.    At that point, Riera knew that word was circulating that there was a racist in their midst and that it was only a matter of time before Riera's name was attached to the alleged profiling. By the time class was over, Riera was overcome with stress and anxiety.  He called his mental health provider and arranged for an appointment the following day.

28. At 4:00 pm on the following afternoon, Carnell emailed Riera and asked if it would be possible to have a "follow up meeting."    Riera responded the following morning as follows:

> Good morning and thank you for your message, Lucinda.

FIRST AMENDED COMPLAINT FOR DAMAGES- 8

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

> Our conversation on Monday afternoon left me shaken and traumatized, especially given my dedication to serving others with care and respect, as you kindly acknowledged.
>
> To ensure my emotional well-being, I would appreciate it if you could please share the purpose of this meeting beforehand.
>
> Respectfully yours, Jose

Carnell responded at 12:35 pm as follows:

> Thank you for getting back to me.   And for your willingness to engage in difficult conversations on Mon. with thoughtfulness, empathy, and compassion.   My goal is I am having [sic] multiple conversations across campus in helping to mitigate what happened on Mon. So to help all those involved and [sic] a short follow up would assist with that process.

29.  The tone of Carnell's email revealed that CWU had no intention of investigating the facts of the incident or the veracity of Cummings' horrible accusations.

30.  At 3:10 pm on April 3, 2024, CWU held a faculty senate meeting[1].  The Senate meeting streamed live and recorded copies were publicly available on the university's website.  At the meeting Wohlpart made the following statement:

> I do want to take a moment to address a really unfortunate, and I would say, unacceptable incident that occurred to one of our most esteemed faculty and colleagues. And when I heard about this incident the first thing Monday morning, Lucinda, I asked her to be engaged – meet with the faculty member to understand what occurred, keep me posted on how I, as president, we as an institution could assist and respond to the situation. What I know is that, any of that – all of that – won't undo the harm that occurred. And I do also know that this was harm upon -- being perpetuated. A few of you reached out to me and suggested that this incident should be discussed with community policing task force, which we will pass along. Some of you have offered suggestions about what we might be thinking about differently, I've passed that on to the task force. But even then, even as we learn and grow from this incident, the harm remains. Somehow we have the [inaudible] to stop. I do appreciate all the work that Lucinda has done as we determine how to respond. I'm deeply sorry.

---

[1]  The faculty senate is a group of representatives from each academic department who meet for the purpose of ensuring that university faculty have a voice in CWU governance.   Each academic department elects 1-4 senators, to represent its interests.  Wohlpart attends all senate meetings.

FIRST AMENDED COMPLAINT FOR DAMAGES- 9

31.  Defendant Erdman is a senator who attended the faculty senate meeting and took the minutes.  Erdman's minutes elaborated on Wohlpart's statement as follows:

> **Welcome to the Deep South, Circa 1935** 🙁
> Without naming names or describing the incident, Wohlpart expressed his outrage at a recent unconscionable incident on campus.
> From my own knowledge, I think I can tell you the basics:  It was an incident of blatant racial profiling.  Campus police were called because a person of color was sitting quietly in the lobby of a CWU building for a brief interval.  The person turned out to be a highly distinguished faculty member—but was compelled to produce and show ID before being left in peace.
> (I must remark that this is outrageous on multiple levels.  All CWU buildings are public; they belong to the State of Washington and its people.  *Anyone* may sit in the lobby of any of our buildings. There was no reason at all to call the police—except, I guess, that this was a person of color.)
>
> Wohlpart called the incident "unacceptable" and said that Central is working to see to it that such a thing doesn't happen again on our campus.

32.  Erdman emailed her "Deep South" summary to all CWU adjunct faculty members.

33.  By this time, Riera's anxiety was acute.  At the recommendation of Dr. Emily Faust, Riera's psychologist, Riera applied for medical leave.

34.  On April 5, 2024, CWU approved Riera's request for medical leave based upon Dr. Faust's findings that Riera was suffering from "acute stress/mental health symptoms causing significant functional impartment at work, home and socially."

35.  As CWU was approving Riera's request for medical leave, defendant Rajendran (Dean of the College of Education and Professional Studies), made the decision to place Riera on paid administrative leave pending an investigation into the alleged act of racial profiling.

36.  At approximately 4:15 pm, on the afternoon of April 5, defendant Andrews (Office of the Provost) called Riera and advised that he was being placed on paid administrative leave pending an investigation by the Office of Civil Rights Compliance into the incident on the morning of April 1, 2024.   Andrews further advised Riera that a decision was made to preclude Riera from being on university property pending the investigation and that Riera should remain at home for his "own physical well-being."

37.  Immediately after the call, Andrews emailed to Riera a letter from Rajendran setting forth the terms of Rier's leave.  In the letter, Rajendran stated:

FIRST AMENDED COMPLAINT FOR DAMAGES- 10

> This is to notify you that I am placing you on paid administrative leave, effective today, April 5, 2024, pending an inquiry into the incident that occurred Monday, April 1, 2024.
>
> This inquiry will be conducted by the Office of Civil Rights Compliance and Title IX and is of a **confidential** nature. While this inquiry is taking place, we ask that you not discuss it with students, staff, or faculty. You may discuss it with your union representative, the investigator(s), or Faculty Relations. Any unauthorized communications with others regarding this matter, or any communication or actions reasonably perceived as retaliatory, could serve as independent grounds for disciplinary action, including termination.
>
> You will remain on paid home assignment until further notice. While on home assignment, you are not to access University premises unless scheduled in advance with Faculty Relations. You are expected to remain available to my office, the investigator(s), and the University during your regularly scheduled hours (emphasis original).

38. Rajendran sent copies of his letter to defendant MacArthur (Office of Civil Rights Compliance, defendant McGladrey (Chair of the Information Technology Management Department), defendant Kirstein (Office of Provost) and defendant Sleigh-Layman (Human Resources).

39. On April 8, 2024, CWU sent out a public notice that Riera was on short-term leave and that his classes were temporarily cancelled.   One hour later, at 10:20 am, defendant Wohlpart sent the following email message to all CWU faculty, staff and students:

> This last week, our journey to become a model learning community of equity and belonging was tested with an incident that has launched a broader conversation about how our words become action on our campus.
>
> That incident, between one of our most esteemed colleagues and CWU Police, has been the subject of conversation and concern. The police were responding to a call from another employee and determined that no police involvement in the incident was necessary. I want to reassure the campus community that CWU is working with everyone involved to best ensure that they feel safe and supported on campus. This event calls upon us as a community to critically reflect on processes and actions that may keep us from living into the fullest expression of our vision, mission, and values.

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

> I will be asking our Community Policing Task Force, which has staff, faculty, and student representation, to review what occurred and provide recommendations for how we can learn from this incident. In addition, our Office of Civil Rights Compliance will conduct an inquiry into the initial call.
>
> As a university, we will be placing a stronger emphasis on bias training. While this work will help us live more fully into our vision and mission, we deeply regret the incident and its impact on our colleague and university community.

40. At no time did Wohlpart or any other CWU representative ask Riera for his version of events.   No interviews were conducted.  No investigation took place.   CWU was not interested in the truth but, rather, the opportunity to leverage the incident to advance its standing among diversity and inclusivity groups.  It did so by ratifying rumor mill gossip, fanning the flames of racial division, and identifying Riera as the catalyst while publicly proclaiming its abhorrence for such conduct.

41. On April 24, 2024, defendant McGladrey issued an unfavorable review of Riera on the grounds that he failed to submit the required documents in advance of his review.  Riera was on medical leave at the time of the letter.

42. The accusations against Riera spread through the small academic community quickly.  Riera received messages from those who know him expressing their sympathy about the baseless nature of the allegations.  However, in this era of social media, the vast majority of the comments were from those who do not know Riera.  And they were not as kind.  In these posts, Riera was called "an asshole" and "a fascist" – amongst other unflattering descriptors.   Ironically, at least one posting disparaged Riera's ethnicity, calling him a "coconut Mexican."   Several news outlets reported the story of Riera's alleged racial profiling.

43. Riera was terrified to appear publicly in Ellensburg for fear of public humiliation and potential violence.   Riera temporarily stayed with friends and family outside of Ellensburg, returning only to attend medical appointments.  After he returned to

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

Ellensburg, Riera did not feel safe shopping or attending local church services and traveled to Yakima for such activities.  Riera has since moved to North Carolina.

44.    At the time Riera was placed on administrative leave, he was performing all of the essential functions of his job.

45.    The individuals named as defendants herein are persons within the meaning of 42 USC §1983 and their actions were taken under the color of law.

## V.    FIRST CAUSE OF ACTION
### Wrongful Termination of Employment Agreement
### *Against CWU, Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman*

46.    Riera incorporates by reference the allegations set forth in paragraphs 1 through 45 as though set forth in full.

47.    Riera's employment at CWU was subject to a collective bargaining agreement between CWU and United Faculty of Central/UFC.  Article 26 of the bargaining agreement governs employee discipline and specifically states:

> Faculty shall be disciplined or discharged ***only for just cause*** (emphasis added).

Paragraph 26.6 of the collective bargaining agreement further provides:

> Faculty ***shall be*** given a reasonable opportunity to respond to allegations which could result in discipline. Before any investigatory interview, a faculty member will be informed of the nature of the matter or allegations in sufficient detail to reasonably apprise them of the matter, unless such notice would endanger the investigation. . .(emphasis added).

48.    Appendix E to the collective bargaining agreement sets forth the guidelines for a just cause investigation.   Part three of the guideline asks:

> Did the Employer, ***before administering the discipline to the employee***, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management? (emphasis added)

FIRST AMENDED COMPLAINT FOR DAMAGES- 13

BPE LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

49. Riera was placed on administrative leave without just cause. Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman are responsible for ensuring that Riera receives the protections to which he is entitled under the collective bargaining agreement. Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman not only failed to ensure Riera such protections, all participated in the adverse employment action that gives rise to this case. Riera was not given a hearing or any opportunity to confront the accusations against him prior to the time he was placed on administrative leave. These failures constitute breaches of the collective bargaining agreement.

50. As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

## VI.     SECOND CAUSE OF ACTION
### Wrongful Termination - Retaliation for Report of Safety Concern
### *Against CWU, Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman*

51. Riera incorporates by reference the allegations set forth in paragraphs 1-50 as though set forth in full.

52. It is unlawful and in violation of public policy to take adverse action against an employee for engaging in conduct that constitutes the performance of a public duty. Riera was performing a public duty when he notified the campus police of a possible vulnerable person potentially in need of assistance. CWU placed Riera on administrative leave because he engaged in such public duty. Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman are responsible for ensuring compliance with laws and policies designed to protect employees against such adverse action. Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman not only failed to enforce such laws and policies, all participated in the adverse employment action that gives rise to this case.

53. As a direct and proximate result of such conduct, Riera has suffered harm.

FIRST AMENDED COMPLAINT FOR DAMAGES- 14

BPE LAW GROUP

700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

## VII.    THIRD CAUSE OF ACTION
**Wrongful Termination - Retaliation for Participating in Family Leave Benefits**
***Against CWU, Wohlpart, Rajendran, McGladrey, Kirstein and Sleigh-Layman***

54.    Riera incorporates by reference the allegations set forth in paragraphs 1-53 as though set forth in full.

55.    Riera is entitled to job protection while availing himself of benefits and protections of the Family Medical Leave Act ("FMLA").    On April 5, 2024, Riera's request for FMLA leave was granted based upon the report of Dr. Emily Faust.    While Riera was on medical leave, CWU McGladrey gave Riera an unfavorable performance review.  He presented the written review to Rajendran, who offered no objection and placed the review in Riera's personnel file.   Wohlpart, Kirstein and Sleigh-Layman are responsible to ensuring that CWU acts in compliance with the governing law.  Wohlpart, Kirstein, Rajendran and Sleigh-Layman knew that Riera was on medical leave when McGladrey issues his review.  Despite this knowledge, all defendants named in this cause of action directly participated in the adverse action.

56.    As a direct and proximate result of the foregoing, Riera has suffered harm.

## VIII.    FOURTH CAUSE OF ACTION
**Violation of 42 USC §1983 - Deprivation of Right to Free Speech**
***Against Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein***

57.    Riera incorporates by reference the allegations set forth in paragraphs 1-56 as though set forth in full.

58.    Riera's employment at CWU was a valuable government benefit or privilege.   The first amendment constrains the right of a public employer to take adverse action against a public employee as punishment for speaking out on a matter of public concern.  Issues involving public safety are a matter of public concern.

59.    Riera's report of a vulnerable person on campus was matter of public concern and in the states' interest of public safety.  Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-

**BPE** LAW GROUP
700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

Layman and Kirstein were responsible for ensuring that Riera would not be adversely affected by speaking out on a matter of public concern.  These defendants not only failed to provide Riera with such protection, they took affirmative adverse action against Riera for speaking out on a matter of public concern.

60.    As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

### IX.    FIFTH CAUSE OF ACTION
**Violation of 42 USC § 1983 - Deprivation of Due Process Liberty Interest**
***Against Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein***

61.    Riera incorporates by reference the allegations set forth in paragraphs 1-60 as though set forth in full.

62.    Riera's employment at CWU was a valuable government benefit or privilege. Riera has a liberty interest in his good name, reputation, honor, and integrity.   Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein were responsible for ensuring that Riera would not be wrongfully deprived of this liberty interest.   Yet Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein knowingly deprived Riera of this liberty interest when they publicly accused him of racial profiling, thereby impugning his character without first granting the opportunity to address the accusations and clear his name.  The accusations were stigmatizing, substantially false and made in connection with the decision to place Riera on administrative leave.

63.    As a direct and proximate result of such conduct, Riera has suffered harm.

### X.    SIXTH CAUSE OF ACTION
**Violation of 42 USC §1983 - Deprivation of Due Process Property Interest**
***Against Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein***

64.    Riera incorporates by reference the allegations set forth in paragraphs 1-61 as though set forth in full.

FIRST AMENDED COMPLAINT FOR DAMAGES- 16



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

65. Riera's employment at CWU was a valuable government benefit or privilege. As an employee of CWU, and pursuant to the terms of the collective bargaining agreement, Riera had a property interest in his continued employment.

66. Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein were responsible for ensuring that Riera was not wrongfully deprived of this property interest.  Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman and Kirstein knowingly deprived Riera of this property interest by placing him on administrative leave in violation of Article 26 of the collective bargaining agreement without a hearing.

67. As a direct and proximate result of the foregoing conduct, Riera has suffered harm.

**XI.    SEVENTH CAUSE OF ACTION**
**Defamation**
***Against CWU, Wohlpart and Erdman***

68. Riera incorporates by reference the allegations set forth in paragraphs 1-67 as though set forth in full.

69. CWU, Wohlpart and Erdman knowingly and with malicious and/or reckless disregard of its veracity, disseminated to the public false, unprivileged statements about Riera.

70. As a direct and proximate result of such conduct, Riera has suffered harm.

**XII.    EIGHTH CAUSE OF ACTION**
**Outrage**
***Against all Defendants***

71. Riera incorporates by reference the allegations set forth in paragraphs 1-70 as though set forth in full.

72. The conduct of  the defendants, as alleged herein, is extreme and outrageous and carried out intentionally or with reckless disregard for the consequences.

73. As a direct and proximate result of this conduct, Riera has suffered harm, including extreme emotional distress.

FIRST AMENDED COMPLAINT FOR DAMAGES- 17



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400

## **PRAYER FOR RELIEF**

WHEREFORE, Riera prays for the following relief:

1. Judgment in favor of Riera all causes of action;

2. An award of general and special damages in an amount to be proven at the time of trial;

3. An award of punitive and statutory damages as permitted by law;

4. An award of attorneys' fees and costs as permitted by law, including 42 USC §1983; 42 USC §1988; RCW 49.60 and RCW 49.48.

5. An award of pre-judgment interest;

6. An order that all negative material be removed from Riera's CWU personnel file; and

7. All such further relief as the court deems just and proper.

Dated: November 13, 2024                    BPE Law Group

By: _____
Erica A. St. Louis WSBA #28793
*Counsel for Riera*

FIRST AMENDED COMPLAINT FOR DAMAGES- 18



700 E. Mountain View Ave., Suite 508
Ellensburg, WA 98926
www.bpelaw.com
509-245-0400