Elizabeth A. Olsen
Assistant Attorney General
800 Fifth Ave, Suite 2000
Seattle, WA 98104
206-464-7744

THE HONORABLE REBECCA L. PENNELL

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**
**IN SPOKANE**

| | |
|---|---|
| JOSE RIERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL WASHINGTON UNIVERSITY; JAMES WOHLPART, an individual; RUTH ERDMAN, an individual; LUCINDA CARNELL, an individual; SATHYANARAYANAN RAJENDRAN, an individual; JOHN MACARTHUR, an individual; BRIAN MCGLADREY, an individual; STACI SLEIGH-LAYMAN, an individual; and KURT KIRSTEIN, an individual,<br><br>Defendants. | NO. 1:24-cv-03147-RLP<br><br>DEFENDANTS' RENEWED MOTION TO DISMISS UNDER CR 12(B)(6) AND MOTION FOR SUMMARY JUDGMENT UNDER CR 56<br><br>**NOTE ON MOTION CALENDAR**: March 25, 2026 @ 10:00 AM<br><br>**ORAL ARGUMENT REQUESTED** |

# I. INTRODUCTION

Plaintiff Jose Riera claims that he was wrongfully terminated from his position at Defendant Central Washington University (CWU); that the Individual Defendants violated his rights to 42 U.S.C. §1983 free speech, liberty interests, and property interests; that Defendants defamed him; and that Defendants acted with outrage. Plaintiff has failed to provide a prima facie case for his wrongful termination, defamation, and outrage claims. Plaintiff fails to create cognizable claims for any of his 42 U.S.C. § 1983 causes of action, and therefore, Plaintiff has no basis for recovery on any of his claims. As such, Plaintiff cannot state a claim upon which relief can be granted, and thus Defendants respectfully request this Court dismiss all of Plaintiff's claims in their entirety with prejudice.

# II. RELEVANT FACTS

## A. Plaintiff Accepts a Faculty Position at Appalachian State University for the 2024-25 Academic Year

Plaintiff Riera worked at CWU as a non-tenure track faculty member in the College of Education and Professional Studies. Dkt. 12 ¶ 2. Plaintiff indicated to CWU as early as December 1, 2023, that he intended to seek other professional employment, and would not be returning to CWU for the 2024-25 academic year. Decl. of Wohlpart ¶ 42; Exhibits 1-2. As of March 2024, Plaintiff had accepted a position at Appalachian State University year in North Carolina for the 2024-25

academic year, and confirmed he would not be seeking renewal of his employment contract with CWU. Decl. of Wohlpart ¶ 42, *see also* Exhibits 1-2.

**B. The April 1, 2024 Incident**

On April 1, 2024, at 9:31AM, Plaintiff made a phone call to CWU's police, KITTCOM. Dkt. 12 ¶ 19. Plaintiff reported to KITTCOM that while walking to his office, he witnessed a woman who looked disoriented/confused, struggling to maintain balance. Dkt. 12 ¶ 17. Plaintiff reported that he had witnessed the woman being removed from a coffee shop earlier that day by law enforcement. *See* Exhibit 7. Of note, Plaintiff told KITTCOM that he wanted to report the woman "before things got out of control." *See* Exhibit 7.

CWU Officer Mackenzie Erickson responded to Plaintiff's call and reported to Samuelson Hall. Decl. of Wohlpart ¶ 2; *see also* Exhibit 7. The woman was identified as Dr. Bobby Cummings, an 80-year-old highly esteemed 30-year tenured faculty member. Decl. of Wohlpart ¶ 3; *see also* Exhibit 7. Dr. Cummings is also Director of CWU's Africana and Black Studies Program. Decl. of Wohlpart ¶ 4; *see also* Exhibit 7. Dr. Cummings is visually impaired and walks from her home in Ellensburg to her office. Decl. of Wohlpart ¶ 5; *see also* Exhibit 7. She makes it a regular practice to stop and rest in the Samuelson Hall lobby on the way to her office. Decl. of Wohlpart ¶ 6; *see also* Exhibit 7.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

The 9:31AM dispatch call to Officer Erickson was considered an "unwanted person" call due to Plaintiff's report that he allegedly witnessed the same woman being kicked out of a coffee shop by law enforcement earlier that day. Decl. of Wohlpart ¶ 7; *see also* Exhibit 7. An unwanted person call is different than a welfare check, and unwanted person calls have heightened law enforcement response. Decl. of Wohlpart ¶ 8. There is no evidence that Dr. Cummings, or any other woman, was kicked out of any coffee shop that day. Decl. of Wohlpart ¶ 9. Dr. Cummings was extremely humiliated and offended by the incident, yet did not personally file any formal complaint. Decl. of Wohlpart ¶ 11. However, after her interaction with the police, Dr. Cummings described the incident with CWU police to two English Department staff members, Ms. Muller and Ms. Rhynes. Decl. of Wohlpart ¶ 12. As a result, Misses Muller and Rhynes filed bias complaints alleging that Dr. Cummings was a victim of racial profiling. Decl. of Wohlpart ¶ 13.

**C. CWU Responds to the April 1st Incident**

In response to the bias complaints and April 1st incident, Defendant Carnell met with Plaintiff on April 1st, as well as other parties across campus in order to understand what occurred and mitigate any damage caused by the incident. Decl. of Carnell ¶ 3. The word spread quickly around campus and



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

community members felt the incident was a racial concern. Decl. of Wohlpart ¶ 14. Campus was concerned with the police being called on an esteemed Black community member. Decl. of Wohlpart ¶ 15. Several public records requests were filed to gain access to the KITTCOM report. Decl. of Wohlpart ¶ 16.

Two days later, on April 3, 2024, a Faculty Senate meeting was held, as part of ordinary course of business. Decl. of Wohlpart ¶ 17. At the meeting, President Wohlpart addressed the April 1st incident, ensuring not to identify either Plaintiff or Dr. Cummings by name. Decl. of Wohlpart ¶ 18.

> I want to take a moment to address a really unfortunate and even unacceptable incident that occurred to one of our most distinguished faculty members this past week. When I heard about this incident first thing Monday morning from Lucinda, I asked her to meet with me, met with the faculty member to understand what had occurred, to keep me posted on how I as President and we as an institution can assist and respond to this situation. What I know is that any of that, won't undo the harm that occurred. I do also know that this is harm, upon harm and we keep perpetuating it and it continues to grow. A few of you have reached out to me and suggested that this incident be discussed by the Police Task Force, and it will be. Some of you have offered suggestions of what we might be thinking about differently and I have passed that on to the Police Task Force. Even if the learning grows from this incident the harm remains. Somehow, we have to find a way to stop perpetuating this harm.

Decl. of Wohlpart ¶ 19. The focus of the speech was on moving forward and CWU's commitment to racial equality and a safe campus.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

Defendant Erdman, though not an officially tasked note-taker, regularly takes notes at Faculty Senate meetings. Decl. of Erdman ¶ 2. After the April 3rd meeting, Defendant Erdman emailed her notes to non-tenured track faculty at CWU. Decl. of Erdman ¶ 3. Nobody outside of CWU faculty received Defendant Erdman's notes. Decl. of Erdman ¶ 4. Defendant Erdman's notes are not the official notes from faculty senate meetings. Decl. of Olsen ¶ 3. Official notes are taken and sent out. Decl. of Olsen ¶ 4.

On April 5, 2024, at 4:15PM, Charlene Andrews, Faculty Relations, called Plaintiff and informed him that he was being placed on paid administrative leave pending an investigation into the April 1st incident. Decl. of Wohlpart ¶ 21. The phone call was followed by a letter stating the same from Dr. Rajendran, Dean of the College of Education and Professional Studies. Decl. of Rajendran ¶ 3. Paid administrative leave is not viewed as disciplinary by CWU and is standard procedure, consistent with past practices, for many different reasons, including ensuring that CWU is able to make a full and complete inquiry or investigation. Decl. of Wohlpart ¶ 22. This is not disciplinary and is made prior to any determination. Decl. of Wohlpart ¶ 23.

On April 8, 2024, President Wohlpart sent a letter to CWU faculty and



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

students and again, ensured he did not refer to Plaintiff or Dr. Cummings by name. Decl. of Wohlpart ¶ 24; *see also* Exhibit 3. President Wohlpart made no reference to racial profiling and instead stressed that CWU would be placing a higher emphasis on bias training as a result of campus community concern. Decl. of Wohlpart ¶ 26. The large concern that President Wohlpart was seeing in the campus community was a concern over the police being called on black woman who both belongs there and is an esteemed member of the CWU community.

**D. Riera Takes FMLA Leave**

Plaintiff contacted CWU Leave and Accommodation Coordinator, Jennifer Mertel on April 3, 2024. Decl. of Wohlpart ¶ 27; *see also* Exhibit 4. Ms. Mertel provided Plaintiff with information regarding FMLA, provided Plaintiff with a temporary FMLA designation, retroactively effective April 1st. Decl. of Wohlpart ¶ 28, *see also* Exhibit 4.

Plaintiff submitted his FMLA medical certification on April 5, 2024, with the expected duration of two to six weeks, expecting to return to work on July 1, 2024. Decl. of Wohlpart ¶ 30; *see also* Exhibit 5. On April 8th, Plaintiff's counsel contacted Ms. Andrews and informed her that Plaintiff was on FMLA leave. Decl. of Wohlpart ¶ 31. Ms. Andrews had previously been unaware that Plaintiff was on FMLA leave, and upon becoming aware, Ms. Andrews immediately



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

worked to withdraw Plaintiff's paid administrative leave status. Decl. of Wohlpart ¶ 32. On May 14th, medical documentation extended Plaintiff's medical leave until at least June 15th. Decl. of Wohlpart ¶ 35; *see also* Exhibit 5.

Per CWU practice and procedure, CWU is unable to conduct investigations into employees on protected leave. Decl. of Wohlpart ¶ 37. As a result, CWU was unable to complete any investigation into the April 1st incident, as Plaintiff went on protected FMLA leave effective April 1st. Decl. of Wohlpart ¶ 38.

**E. Riera's Employment Contract Expires While He Is on FMLA Leave**

Plaintiff's at-will employment contract expired on June 15, 2024. Decl. of Wohlpart ¶ 39; *see also* Exhibit 6. Plaintiff was not terminated. Decl. of Wohlpart ¶ 40. Plaintiff had no expectation of contract renewal as he already informed CWU that he planned to relocate across the country as of December 2023, and had already accepted a faculty position at another university as of March 2024. Decl. of Wohlpart ¶ 42; *see also* Exhibits 1, 2.

## III. EVIDENCE RELIED UPON

Defendant CWU relies upon the pleadings and evidence on file in this case under Civil Rule 12(b)(6), including Plaintiff's Amended Complaint at issue; as well as Declarations of James Wohlpart, Ruth Erdman, Lucinda Carnell, Sathyanarayanan Rajendran, John MacArthur, Brian McGladrey, Staci Sleigh-



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

Layman, Kurt Kirstein, and Elizabeth Olsen; and the exhibits attached thereto.

## IV. RELIEF REQUESTED

Defendant CWU seeks an order dismissing Plaintiff's Complaint against all Defendants in full, with prejudice.

## V. ARGUMENT

The Court should dismiss the Plaintiff's causes of action for 42 USC §1983 deprivation of right to free speech, deprivation of due process liberty interest, and deprivation of due process property interest in full for failure to state claims upon which relief can be granted under CR 12(b)(6). Plaintiff's remaining causes of action—wrongful termination of employment agreement, wrongful termination in retaliation for report of safety concern, wrongful termination in retaliation for participating in Family Leave Benefits, defamation, and outrage—should be dismissed as Plaintiff fails to provide facts in the record that support such claims. Thus, Plaintiff's Complaint should be dismissed with prejudice.

### A. Dismissal Standard and Summary Judgment Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A complaint may be dismissed for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

696, 699 (9th Cir. 1990). The complaint must plead facts "plausibly suggesting" plaintiff's legal claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 1966 (2007). However, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Because the Plaintiff lacks cognizable legal theories against all Defendants, the Court should dismiss with prejudice all claims alleged against all Defendants.

A party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine material issue of fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). A moving party may meet its burden by showing a lack of evidence in the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Here, there is no evidence in the record that creates any genuine issues of material fact.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

### B. Plaintiff Was Not Wrongfully Terminated When His Contract Expired Due to His Elective and Personal Relocation to North Carolina

Plaintiff pleads three separate causes of wrongful termination, all of which fail at summary judgment. Plaintiff alleges (i) wrongful termination of employment agreement; (ii) wrongful termination in retaliation for report of an alleged safety concern; and (iii) wrongful termination in retaliation for participating in Family Leave Benefits (Causes of Action One, Two, and Three). Plaintiff fails to mention that as of—at the latest—early December 2023, Plaintiff was already planning to relocate, and as of March 2024 had accepted a position at Appalachian State University in North Carolina. Decl. of Wohlpart ¶ 42; *see also* Exhibits 1-2. As early as December 1, 2023, Plaintiff informed Defendants of his relocation and intent not to return to CWU the following academic year. Decl. of Wohlpart ¶ 42; *see also* Exhibits 1-2. Defendants never terminated Plaintiff's employment agreement. Decl. of Wohlpart ¶¶ 39-40.

1. <u>There was no wrongful termination of employment agreement nor collective bargaining agreement violation</u>

Plaintiff alleges he was wrongfully terminated in conflict with his Collective Bargaining Agreement (CBA). Dkt. 12 ¶ 46. Specifically, Plaintiff cites several provisions of the CBA. Dkt. 12 ¶¶ 47-48. These provisions discuss discipline and discharge as only for just cause, as well as an opportunity to



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

respond. *Id.* Plaintiff alleges that he was placed on administrative leave without just cause. Dkt. 12 ¶ 47. He also alleges that he was not given a hearing or an opportunity to respond to any "accusations." *Id.* As soon as CWU received notice of Plaintiff's medical leave, it began to process paperwork and removed Plaintiff's paid administrative leave. Decl. of Wohlpart ¶ 32.

Plaintiff's paid administrative leave was not disciplinary and was not discharge. Decl. of Wohlpart ¶ 46. CWU's investigation process and practices often and regularly places students, staff, or faculty under inquiry/investigation on paid administrative leave during the review. Decl. of Wohlpart ¶ 47. This is standard procedure, and is made before, and regardless of, any determination made. Decl. of Wohlpart ¶ 48. Further, Plaintiff went on medical leave, effective April 1, 2024, the date of the incident requiring investigation. Decl. of Wohlpart ¶ 49. Per CWU practice and procedure, investigations cannot be conducted into individuals on protected leave. Decl. of Wohlpart ¶ 50. Plaintiff could not be interviewed as he immediately took medical leave, precluding an investigation. Decl. of Wohlpart ¶ 51. Plaintiff was never disciplined or discharged, and instead he planned to leave the University when his yearly, at-will contract expired.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

Therefore, his wrongful termination of employment agreement against all named Defendants must be dismissed.

2. <u>There was no wrongful termination based on retaliation</u>

To maintain a cause of wrongful termination based on retaliation for report of an alleged "safety concern," Plaintiff must prove: (1) the existence of a clear public policy; (2) that discouraging the conduct in which he engaged would jeopardize public policy; (3) that public-policy-linked conduct caused the dismissal; and (4) the defendant must not be able to offer any overriding justification for dismissal. *Korslund v. DynCorp Tri-Cities Services, Inc.*, 125 P.3d 119, 156 Wash.2d 168 (2005).

Here, Plaintiff alleges his phone call to KITTCOM was a welfare check. However, Plaintiff cannot show any existence of a clear public policy. Plaintiff also cannot show that he was dismissed at all. In fact, all evidence shows that Plaintiff already intended to electively relocate to North Carolina *and* had already informed CWU prior to his making of the KITTCOM call. Decl. of Wohlpart ¶ 42; *see also* Exhibits 1-2. Plaintiff's wrongful termination in retaliation for his report of an alleged "safety concern" claim should be dismissed against all named Defendants.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

### C. The Individual Defendants Are Not Subject to Suit Under 42 U.S.C. §1983, and Therefore Plaintiff Can Maintain No 42 U.S.C. §1983 Claims.

Plaintiff initially brought his Section 1983 claims against CWU. Plaintiff refiled his Complaint, amending his Section 1983 claims to instead be against individual Defendants (Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman, and Kirstein). Dkt. 12 ¶¶ 57-67. However, Plaintiff *still* cannot maintain a cause of action against the individual Defendants.

In a 42 U.S.C §1983 cause of action, a plaintiff must show that the defendant has deprived him of a right. *Arnold v. IBM*, 637 F.2d. 1350, 1355 (9th Cir. 1981). Thus, section 1983 has a causation requirement, with liability extending only to those state officials who "subject[], or cause[] to be subjected" an individual to a deprivation of constitutional rights. *Lacey v. Maricopa County*, 693 F.3d 896, 915 (2012). A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if the person does an affirmative act, participates in another's affirmative acts, or omits to perform an act which the person is legally required to do that causes the deprivation. *Johnson v. Duffy*, 588 F.2d. 740, 743 (9th Cir. 1978). For an official to be liable for another depriving a third party of constitutional rights, the official must have the same



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

level of intent as would be required if the official were directly depriving the third party of his rights. *Lacey*, 693 F.3d at 916.

Here, because individual Defendants Wohlpart, Carnell, Rajendran, MacArthur, Sleigh-Layman, and Kirstein neither subjected Plaintiff to, nor caused the Plaintiff to be subjected to a deprivation of constitutional rights, the Court should grant summary judgment as a matter of law. The unrebutted evidence establishes that none of the individually named Defendants performed affirmative acts, and none of the individually named Defendants were required to perform any acts as to Plaintiff. Because none of the individually named Defendants acted with intent to deprive Plaintiff of any of his constitutional rights, Plaintiff cannot establish the necessary level of intent to deprive a third party of his or her constitutional rights. Decl. of Olsen ¶ 9; Decl. of Carnell ¶ 2; Decl. of Rajendran ¶ 2; Decl. of MacArthur ¶ 2; Decl. of Sleigh-Layman ¶ 2; and Decl. of Kirstein ¶ 2.

### D. Plaintiff Cannot Maintain a Cause of Defamation Because He Cannot Prove Any of the Required Elements for a Claim of Defamation: Falsity, a Published Communication, Fault, or Damages

Plaintiff brings a claim of defamation against CWU and Individual Defendants President Wohlpart, and Ruth Erdman. Dkt. ¶¶ 68-70. A prima facie case for defamation requires Plaintiff to prove: (1) falsity; (2) publication of an



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

unprivileged communication; (3) fault; and (4) damages. *Seaquist v. Caldier*, 438 P.3d 606, 8 Wash.App.2d 556 (Wash. Ct. App. 2019). However, Washington courts go a step further in clarifying and breaking down the elements required for a prima facie case of defamation. *Carter v. Jones*, 2025 WL 3761337 at *17 (Wash. Ct. App. Dec. 30, 2025). Plaintiff's claim of defamation as to any named Defendants fails because Plaintiff cannot show three of four required elements to show a prima facie case: falsity; privilege; publication of any unprivileged communications; and damages.

1. <u>Plaintiff cannot show that any statements made were false</u>

In proving a defamation claim, Plaintiff must prove a statement was false. *Id*. A provably false statement is one that, as a statement of either fact or opinion, falsely expresses or implies *provable facts* about the Plaintiff. *Id*. Defendants are "not required to prove the literal truth of every claimed defamatory statement," and the falsity prong cannot be met if "the gist of the story . . . is true." *Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, Case No. C18-1385-JCC, 2020 WL 3064183 (W.D. Wash. June 9, 2020). Here, no statement by President Wohlpart nor Professor Erdman named Plaintiff as a party to the April 1st incident, nor implied in any way that he was involved. Decl. of Wohlpart ¶ 18; Decl. of Erdman ¶ 5. Additionally, no statements made by CWU or any named

Defendant contained *provable facts* about the Plaintiff. Decl. of Olsen ¶ 5; Decl. of Erdman ¶ 6. Plaintiff cannot prove the falsity to recover for defamation.

2. <u>Plaintiff cannot show that an unprivileged communication was published</u>

Plaintiff's defamation claim fails two-fold here: any communications were privileged and no communications were published. "Defamation defendants who write about … matters of public interest receive the protection of the heightened standard of actual malice." *Id.* At *21. To determine whether there is a public controversy, courts "must examine whether persons actually discussed the subject and look and see if the press covers the debate. A controversy becomes public when a reasonable person would expect persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Id.* "Speech addresses a matter of public concern when the content fairly relates to any matter of political, social, or other concern to the community or when the subject possesses general interest and value for the public." *Id.* Here, the campus community was discussing the incident and the press reached out to parties. There can be little doubt that the police being called on a black woman is a matter of social concern that the community possesses interest in. Decl. of Olsen ¶ 8. As a result, this Court should apply the heightened standard of actual malice.

"Publication of a defamatory statement . . . is essential to liability." *Armijo v. Yakima HMA, LLC*, 868 F.Supp.2d 1129, No. 11-cv-03114 (E.D. WA. 2012), *see also Doe v. Gonzaga Univ.*, 24 P.3d 390, 143 Wash.2d 687 (2001) (a university "cannot be held liable for communications among its own employees."). Washington law is clear that intraorganizational communications



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

are not defamatory, as there is no "publication" of unprivileged communication; "the [agency] is essentially communicating with itself." *Id.* at 1139. Here, no communications were made outside of CWU. Decl. of Wohlpart ¶ 53. Plaintiff cannot prove the publication element necessary to defamation liability.

3. <u>Plaintiff cannot show actual malice by clear and convincing evidence to meet the fault standard</u>

Actual malice is a subjective test that "requires evidence that the speaker was plagued with serious doubts as to the truth of the statement. *Carter*, 2025 WL 3761337 at *34. Washington courts make clear that "mere failures to investigate or mistakes made in an investigation leading to a [publication] will not prove recklessness." *Id.* at *35.

Here, Plaintiff cannot show actual malice by any parties at CWU by clear and convincing evidence. Like in "all defamation cases, the plaintiff, to defeat summary judgment, could simply state that the defendant lied when denying actual malice . . . . In order to protect free speech rights, defamation law requires something more to defeat a summary judgment motion." *Id.* at *36. "Because of the heightened burden imposed . . . and challenges associated with offering evidence about state of mind, the defamation plaintiff cannot easily reach the defamation standard, even at summary judgment." *Id.*

Actual malice does not "automatically become a question for the jury whenever the plaintiff introduces pieces of circumstantial evidence tending to



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

show that the defendant published in bad faith, nor does it suffice for a plaintiff merely to proffer purportedly credible evidence that contradicts [the] defendant's story." *Id.* Even if here plaintiff could show bad motives, "showing ill will toward the plaintiff or bad motives do not support a finding of actual malice." *Id.*

4. Plaintiff can't show damages as a result of any alleged defamation

Additionally, defamation is primarily concerned with compensating an injured party for damage to reputation. *Doe v. Gonzaga Univ.*, 24 P.3d 390, 143 Wash.2d 687 (2001). Here, Riera has alleged no actual damage to his reputation. Riera loosely claims his reputation *will be* damaged but has provided zero facts that can be attributed to any damage to his reputation. In fact, Riera had no issue maintaining his new employment at another higher education institution, indicating that there was no damage to his professional reputation. Exhibits 1-2. Therefore, Plaintiff's claim of defamation (Cause of Action Seven) fails.

**E. No Actions by Any Defendants Amount to the Level of Outrage**

Plaintiff brings a claim of outrage, or intentional infliction of emotional distress, against all Defendants. Dkt. ¶¶ 71-73. Plaintiff's claim for outrage fails. To establish a tort of outrage, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. *Reid v. Pierce County*, 961 P.2d 333, 136 Wash.2d 195 (1998); Restatement (Second) of Torts § 46. The conduct



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

in question must go beyond all possible bounds of human decency and be regarded as atrocious, and utterly intolerable in civilized community. *Dicomes v. State*, 782 P.2d 1002, 113 Wash.2d 612 (1989).

Washington courts have made clear that "discharge itself is not [enough] to support a claim of outrage." *Armijo*, 868 F.Supp.2d at 1136. Courts have gone so far as to hold that "termination with a discriminatory or retaliatory motive cannot be enough to support [the] tort [of outrage]." *Id.* Courts also fail to find outrage when there is "embarrassment or humiliation." *Id., see also* Restatement (Second) of Torts § 46 and Comment D. Plaintiff's humiliation claim is not recoverable on the basis of outrage. Here, no conduct alleged by any Defendants rises to the level of what a reasonable jury could find to be recoverable outrage.

## VI. CONCLUSION

Because Plaintiff cannot establish intent to deprive him of any constitutional rights, Plaintiff cannot state cognizable claims for which Section 1983 relief may be granted against any individually named Defendants. Plaintiff further cannot establish evidence to survive summary judgment as to claims of wrongful termination, defamation, and outrage. Therefore, all of Plaintiff's claims against Defendant CWU and the individually named Defendants should be dismissed with prejudice.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7352

DATED this 3rd day of February, 2026.

NICHOLAS W. BROWN
Attorney General

*s/Elizabeth A. Olsen*
Elizabeth A. Olsen, WSBA No. 58702
Attorney for the Defendants
Attorney General's Office, Torts Division
800 Fifth Avenue, Suite. 2000,
Seattle, WA 98104-3188
Phone: 206-464-7744
Fax: 206-587-4229
Email: Elizabeth.Olsen@atg.wa.gov

## CERTIFICATE OF SERVICE

I certify that I caused to be electronically filed the foregoing document with the CM/ECF system and the registered parties, and that I sent a copy of such filing in the mail to the non-ECF participant as follows:

| Party: | Method of Service: |
|---|---|
| *Attorney for Plaintiff:*<br><br>Erica A. St. Louis WSBA No. 28793<br><br>BPE LAW<br>700 E. Mountain View Avenue<br>Suite 508<br>Ellensburg, WA 98926 | ☒ CM/ECF |

I certify under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 3rd day of February 2026, at Seattle, Washington.

*s/Karah Murphy*
Karah Murphy, Paralegal
Attorney for the Defendants
800 Fifth Avenue, Suite. 2000,
Seattle, WA 98104
206-464-7744
Karah.Murphy@atg.wa.gov