FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 01, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSE RIERA,<br><br>     Plaintiff,<br><br>  v.<br><br>CENTRAL WASHINGTON UNIVERSITY; JAMES WOHLPART, an individual; RUTH ERDMAN, an individual; LUCINDA CARNELL, an individual; SATHYANARAYANAN RAJENDRAN, an individual; JOHN MACARTHUR, an individual; BRIAN MCGLADREY, an individual; STACI SLEIGH-LAYMAN, an individual; and KURT KIRSTEIN, an individual,<br><br>     Defendants. | No. 1:24-CV-3147-RLP<br><br><br>**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING IN PART** |

BEFORE THE COURT is Defendants' Renewed Motion to Dismiss and for Summary Judgment, ECF No. 84. Oral argument was held on March 26, 2026. Erica St. Louis appeared for Plaintiff Jose Riera. David L. Force appeared for Defendants.

As set forth below, Defendants' motion is granted in part and denied in part.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 1

The majority of Defendants' arguments are well taken. CWU never imposed any adverse employment action that could give rise to claims for wrongful termination, retaliation, denial of due process, or outrage. And Defendant James Wohlpart never made any false factual claims about Mr. Riera that could give rise to a claim of defamation. However, the record reveals genuine issues of material fact as to whether Defendant Ruth Erdman may be liable to Mr. Riera for defamation. Accordingly, Mr. Riera's claim against Defendant Erdman survives summary judgment.

## BACKGROUND

Mr. Riera was employed in a fixed term, non-tenure track faculty at Central Washington University (CWU). His contract began in September 2023 and was set to expire on June 15, 2024. His employment was governed by a Collective Bargaining Agreement, which provided that he may only be disciplined or discharged for just cause. ECF No. 87, Exh. 1.

The events giving rise to the Complaint took place over a short period in April, 2024. On the morning of April 1, Mr. Riera called the CWU police to report an older, "apparently homeless", woman wandering around Samuelson Hall. He said he wanted to make a report "before things get…out of control." An officer reported to Samuelson Hall and confirmed the identity of the woman as a CWU professor. No further action was taken by campus police or Mr. Riera.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART~ 2**

The CWU professor shared her experience with two colleagues. The colleagues immediately filed bias complaints with CWU, alleging the target of Mr. Riera's call—a Black woman—had been the victim of racial profiling.

Later that afternoon, Lucinda Carnell, Interim VP of the Office of Diversity, Equity and Inclusion at CWU, met with Mr. Riera to discuss the issue. ECF No. 87, Exh. 3. Mr. Riera alleges that, during the meeting, Ms. Carnell accused him of racial profiling and urged him to prepare an apology. ECF No. 88, ¶11. Mr. Riera states the meeting left him "shaken and traumatized." ECF No. 87, Exh. 4.

After meeting with Ms. Carnell, Mr. Riera went to prepare for a class. While setting up his lecture materials, Mr. Riera overheard students discussing a racial profiling incident. Mr. Riera became concerned it would only be a matter of time before his name was attached to claims of racial profiling. By the time class was over, Mr. Riera was "virtually paralyzed with stress and anxiety." ECF No. 88, ¶14. He called his therapist for an appointment the next morning. At the appointment, Mr. Riera's therapist diagnosed him with acute stress and recommended medical leave. *Id*. at ¶15.

On Tuesday, April 2, Ms. Carnell sent an email to Mr. Riera, asking for a follow-up meeting. *Id*. at ¶16. Mr. Riera wrote back on the morning of April 3, explaining he was distressed over what had been discussed on Monday. In order to "ensure [his] emotional well-being," Mr. Riera asked Ms. Carnell to share the

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART~ 3**

purpose of the meeting. ECF No. 87, Exh. 4 at 1. Ms. Carnell responded as follows:

> Thank you for getting back to me. And your willingness to engage in difficult conversations on Mon. with thoughtfulness, empathy, and compassion. My goal is I am having multiple conversations across campus in helping to mitigate what happened on Mon. so to help all those involved and a short follow up would assist with that process.

ECF No. 87, Exh. 4 at 1. Mr. Riera interpreted the "tone" and "content" of Ms. Carnell's email to mean "that CWU had no intention of investigating the facts of the incident or the merits of the horrible rumors circulating about me on campus, Rather, her ongoing objective was to extract an unfounded admission of wrongdoing and an apology at all costs." ECF No. 88, ₽18.

On the morning of Wednesday, April 3, 2024, Mr. Riera contacted CWU's Leave and Accommodation Coordinator and requested he be placed on medical leave. ECF No. 87, Exh. 34. The Coordinator provided Mr. Riera with a temporary Family Medical Leave Act (FMLA) designation, retroactively effective April 1st, 2024. ECF No. 88, ¶19. The designation took effect mid-day on April 3. ECF No. 87, Exh. 38 at 2. However, the designation was not immediately made known to other faculty members.

Later that afternoon, a faculty senate meeting was held as part of the ordinary course of business. ECF No. 84-11, ¶¶17-19. During the meeting, CWU President Wohlpart made the following remarks:

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART~ 4**

> I want to take a moment to address a really unfortunate and even unacceptable incident that occurred to one of our most distinguished faculty members this past week. When I heard about this incident first thing Monday morning from Lucinda, I asked her to meet with me, met with the faculty member to understand what had occurred, to keep me posted on how I as President and we as an institution can assist and respond to this situation. What I know is that any of that, won't undo the harm that occurred. I do also know that this is harm, upon harm and we keep perpetuating it and continues to grow. A few of you have reached out to me and suggested that this incident be discussed by the Police Task Force, and it will be. Some of you have offered suggestions of what we might be thinking about differently and I have passed that on to the Police Task Force. Even if the learning grows from this incident the harm remains. Somehow, we have to find a way to stop perpetuating this harm. I do appreciate all the work that Lucinda has done in responding to this incident. Thank you all for doing what you do. I know how much you care about our students and about this institution.

*Id*.

There are emails dated throughout the week between the named defendants discussing how best to handle the situation. *See* ECF No. 87, Exhs. 19, 22, 23, and 28. Ultimately, the decision was made to place Mr. Riera on paid administrative leave. ECF No. 87, Exh. 29.

At approximately 4:15 p.m. on Friday, April 5, Mr. Riera received a phone call notifying him that he had been placed on paid administrative leave due to the April 1 incident. *Id*.; ECF No. 88, ₱26. A follow-up letter was sent to Mr. Riera via email at 4:24 p.m. ECF No. 87, Exh. 30.

At 5:15 p.m., Assistant Attorney General Melissa Nielson contacted named defendants informing them that she had just learned Mr. Riera was on FMLA leave

**ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT IN PART AND DENYING PART~ 5**

and thus could not be placed on administrative leave. ECF No. 87, Exh. 32.

On Saturday, April 6, 2024, Ruth Erdman, a lecturer at CWU and member of the faculty senate, emailed unofficial minutes to non-tenured faculty. Her notes included the following excerpt:

> **Welcome to the Deep South, Circa 1935** 🙁
>
> Without naming names or describing the incident, Wohlpart expressed his outrage at a recent unconscionable incident on campus.
>
> From my own knowledge, I think I can tell you the basics: It was an incident of blatant racial profiling. Campus police were called because a person of color was sitting quietly in the lobby of a CWU building for a brief interval. The person turned out to be a highly distinguished faculty member— but was compelled to produce and show ID before being left in peace.
>
> (I must remark that this is outrageous on multiple levels. All CWU buildings are public; they belong to the State of Washington and its people. Anyone may sit in the lobby of any of our buildings. There was no reason at all to call the police—except, I guess, that this was a person of color.)
>
> Wohlpart called the incident "unacceptable" and said that Central is working to see to it that such a thing doesn't happen again on our campus.

ECF No. 87, Exh. 40 at 10.

The following Monday, April 8, 2024, at 10:20 a.m., Mr. Wohlpart, sent a university-wide email concerning the incident:

> This last week, our journey to become a model learning community of equity and belonging was tested with an incident that has launched a broader conversation about how our words become action on our campus.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 6

That incident, between one of our most esteemed colleagues and CWU Police, has been the subject of conversation and concern. The police were responding to a call from another employee and determined that no police involvement in the incident was necessary. I want to reassure the campus community that CWU is working with everyone involved to best ensure that they feel safe and supported on campus. This event calls upon us as a community to critically reflect on processes and actions that may keep us from living into the fullest expression of our vision, mission, and values.

I will be asking our Community Policing Task Force, which has staff, faculty, and student representation, to review what occurred and provide recommendations for how we can learn from this incident. In addition, our Office of Civil Rights Compliance will conduct an inquiry into the initial call.

As a university, we will be placing a stronger emphasis on bias training. While this work will help us live more fully into our vision and mission, we deeply regret the incident and its impact on our colleague and university community.

ECF No. 87, Exh. 37.

At 2:40 p.m. on April 8, Mr. Riera received an email informing him that his placement on administrative leave was withdrawn. ECF No. 87, Exh. 38. Mr. Riera's period of medical leave ran through the end of his employment contract. *See* ECF No. 84-11, Exh. 5. CWU was aware, prior to April 1, 2024, that Mr. Riera had accepted a position with Appalachian State University to begin in the 2024 fall semester, and did not renew his contract.  ECF Nos. 87, Exh. 19; 84-11, Exhs. 1 and 2.

Mr. Riera has filed an 8-count complaint in federal court, requesting relief based on the foregoing events. Although some of Mr. Rivera's claims arise under

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 7

federal law, Mr. Riera has invoked this Court's jurisdiction based on diversity of citizenship. Defendants request dismissal of all claims.

LEGAL STANDARD

Summary judgment will be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). In ruling on a summary judgment motion, the Court views the evidence and inference therefrom "in the light most favorable to the adverse party." *James v. River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008) (quoting *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308, 1310 (9th Cir. 1977). Summary judgment must be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

DISCUSSION

Mr. Riera's claims against CWU fall into three categories (1) allegations Defendants took adverse employment action in violation of Mr. Riera's contract rights or his rights to liberty/due process or to be free from retaliation (Counts 1-6); (2) defamation (Count 7); and (3) outrage (Count 8). Each category is addressed in turn.

*Adverse Employment Action*

Mr. Riera alleges Defendants took adverse employment action against him

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 8

when they placed him on paid administrative leave. His Amended Complaint, ECF No. 12, alleges six claims arising from this action: (1) wrongful termination in violation of the CWU collective bargaining agreement; (2) wrongful termination in retaliation of a report of safety concern; (3) wrongful termination in retaliation for participating in family leave benefits; (4) retaliation for engaging in free speech (42 U.S.C. § 1983); (5) deprivation of constitutional rights without due process (42 U.S.C. § 1983); and (6) deprivation of property without due process (42 U.S.C. § 1983).

Mr. Riera's claims rest on a faulty factual premise. Regardless of whether paid administrative leave can be considered an adverse action for purposes of Mr. Riera's various legal claims, the uncontested facts show Mr. Riera was never actually placed on administrative leave. Rather, Mr. Riera voluntarily placed himself on family medical leave before anyone from CWU took any employment action. Because Mr. Riera was already on leave at the time CWU informed him he was being placed on administrative leave, the administrative leave designation had no effect, legal or practical. Furthermore, it was rescinded as soon as CWU learned of this error.

This is not a case where Mr. Riera might be able to assert that he was constructively placed on administrative leave. *See, e.g., Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (constructive discharge may be shown

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 9

where a plaintiff feels forced to quit due to Defendants' illegal conduct). There are no facts indicating Mr. Riera placed himself on medical leave because he feared he was going to be fired or placed on administrative leave. Instead, the facts establish Mr. Riera went on medical leave because he was emotionally traumatized by the belief that he was being accused of racial profiling.

When asked during oral argument how Mr. Riera was harmed by being informed he was placed on administrative leave, counsel for Mr. Riera explained that there was a presumption that Mr. Riera was done with CWU. The Court interprets this statement to mean Mr. Riera presumed he would have been placed on administrative leave and ultimately fired, regardless of whether he had voluntarily taken medical leave. This is a speculative claim that does not give rise to a federal cause of action. This Court has jurisdiction only over cases and controversies involving allegations of concrete harm. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341, 136 S.Ct. 1540 (2016). Mr. Riera cannot state a claim based on the belief that he would have been harmed, had the facts been different and had he never taken the step of placing himself on medical leave.

Mr. Riera appears to argue that apart from his right to be free from unlawful interference in continued employment, Defendants also deprived him of his "liberty interest in his good name, reputation, honor, and integrity" in violation of 42 U.S.C. § 1983. ECF No. 12 at 16. However, a reputational harm, untied to some

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART~ 10**

sort of tangible loss, such as loss of employment, is insufficient to assert a claim under § 1983. *See Paul v. Davis*, 424 U.S. 693, 710-12, 96 S.Ct. 1155 (1976); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

Mr. Riera has not raised a genuine issue of material fact as to whether he was subject to an adverse employment action. As a result, Defendants are entitled to summary judgment on Claims 1-6 of the Amended Complaint.

*Defamation*

Mr. Riera's defamation claims pertain to Defendants Wohlpart and Erdman. ECF No. 12, ₧₧68-70.[1] Defamation is a state law claim that requires proof of eight elements: "(1) a false, (2) unprivileged (3) statement (4) of fact, not opinion, (5) about the plaintiff, (6) broadcasted to another, (7) with fault of the speaker, and (8) damages to the plaintiff." *Carter v. Jones*, 581 P.3d 1050, 1076 (Wash.App. 2025).

Regarding Defendant Wohlpart, Mr. Riera alleges defamation based on the April 3 oral statement to the faculty senate and the April 8 email to the CWU community. This allegation fails, as none of Defendant Wohlpart's statements qualify as false statements of fact. When pressed at oral argument to identify which

---

[1] Mr. Riera's Amended Complaint also states CWU is a defendant to the defamation claim. However, Mr. Riera appears to have abandoned this claim and the summary judgment briefing does not describe how CWU as an institution may be liable for defamation.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 11

statements were false, counsel asserted it was the statement that what happened was "unacceptable" (ECF No. 84-11, ⁋19) and that there needed to be "a stronger emphasis on bias training" (ECF No. 87, Exh. 37). The Court disagrees that either of these statements can be characterized as false. At most, they are statements of opinion, which are protected by the First Amendment right to free speech. *See Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wash.App. 147, 157, 225 P.3d 339 (2010).

With respect to Defendant Erdman, Mr. Riera points to five statements: (1) the unofficial meeting minute notes distributed to members of the faculty senate on April 6 (ECF No. 87, Exh. 40 at 9); (2) a correction email sent to members of the faculty senate on April 18, 2024, explaining that the earlier email had been "filled in with what [she] had heard <u>outside</u> the Faculty Senate about the 911 call" and "colored by [her] own personal shock and indignation over such a thing happening to my longtime close colleague, whom [she] hold[s] in very high self esteem" (ECF No. 87, Exh. 40 at 10 (emphasis in original)); (3) Defendant Erdman's republication of a transcript of Defendant Wohlpart's statements to the faculty senate (ECF No. 87, Exh. 40 at 10-11); (4) Defendant Erdman's May 13, 2025 Declaration filed with this Court (ECF No. 51); and (5) Defendant Erdman's February 3, Declaration filed with this Court (ECF No. 84-2).

Statements 3-5 merit little discussion. Defendant's re-publication of Dr. Wohlpart's nondefamatory statement does not meet the criteria for defamation.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 12

And declarations filed with the court as part of litigation are privileged and do not qualify as predicates for defamation. *Young v. Rayan*, 27 Wash.App.2d 500, 508 (2023); *Story v. Shelter Bay Co.*, 52 Wash.App. 334. 338 (1988).

With respect to Defendant Erdman's two emails to the faculty senate, most of her statements cannot be characterized as false. The only exception is Defendant Erdman's statement that what happened on April 1 "was an incident of blatant racial profiling." ECF No. 87, Exh. 40 at 10. A jury could conclude this statement falsely asserts that the person who called police on April 1 engaged in intentional racial profiling. And, given widely-shared public records revealed Mr. Riera as the caller, a jury could also conclude Defendant Erdman's statement was about Mr. Riera.

Defendants argue that regardless of truth or falsity, Defendant Erdman's statement cannot be considered defamatory because it falls under the common interest privilege. "The common interest privilege applies with the declarant and the recipient have a common interest in the subject matter of the communication." *Moe v. Wise*, 97 Wash.App. 950, 957-58 (1999). The privilege applies to "persons involved in the same organization, partnerships, associations, or enterprises who are communicating on matters of common interest." *Id*. at 958. Examples include officers of a nonprofit association or partners to a partnership. *Id*. The privilege arises "when parties need to speak freely and openly about subjects of common organizational or pecuniary interest." *Id*. at 959.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 13

The existence of the common interest privilege "is a matter of law for the court to decide." *Id*. at 958. If the privilege exists, it can be lost in two circumstances (1) if the speaker is not acting in the ordinary course of their work or (2) the speaker's statement was made with actual malice; i.e., reckless disregard for the truth. *Doe v. Gonzaga Univ.*, 143 Wn.2d 587, 703-704 (2001), *rev'd on other grounds, Gonzaga Univ. v. Doe*, 536 U.S. 273, 122 S.Ct. 2268 (2002). Whether the privilege has been lost under either scenario is a question of fact. *Id*.

Here, the parties appear to agree that members of CWU's faculty senate are members of the same organization who share a common interest. The dispute lies in whether an exception applies.

The Court concludes there are issues of fact regarding whether Defendant Erdman's statements fell outside the scope of the privilege. Going to the first exception, Defendant Erdman had no official responsibility for taking notes at faculty meetings and she was not required to share her notes with other members of the senate faculty. ECF No. 84-2. A jury could therefore conclude that her statements were outside the ordinary course of her work as a member of a senate. With respect to the second exception, Defendant Erdman was not a witness to the April 1 incident and no investigation had yet taken place. A jury could therefore conclude Defendant Erdman was reckless in asserting that the call to CWU police was an act of blatant racial profiling.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 14

Defendant Wohlpart is entitled to summary judgment on Mr. Riera's defamation claim but the allegations against Defendant Erdman raise questions of fact that must be resolved by a jury.

*Outrage*

Mr. Riera's outrage claim is asserted against all defendants. ECF No. 12, ⁋⁋71-73. Outrage is a state law claim that requires proof of three elements: "(1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional distress." *Dicomes v. Washington*, 113 Wn.2d 612, 630 (Wash. 1989) (citations omitted). "The conduct in question must be so *outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community*." *Id*. (emphasis in original) (citations omitted). "[M]ere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *Id*. at 1013 (citations omitted).

Mr. Riera's complaint does not specify the particular factual basis for his outrage claim. In his summary judgment briefing, Mr. Riera explains that his claim of outrage stems from "the manner in which CWU handled his situation." ECF No. 89 at 21.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 15

The Court disagrees that Mr. Riera has presented a viable claim of outrage. The ineffective and short-lived decision to place Mr. Riera on paid administrative leave pending an investigation into allegations of racial bias is not the type of behavior that falls outside the realm of decency. Defendants are entitled to summary judgment on this claim.

## CONCLUSION

The only genuine issue of material fact raised by Mr. Riera pertains to the defamation claim against Defendant Erdman. Defendants are entitled to summary judgment on all remaining claims.

Accordingly, IT IS HEREBY ORDERED:

1.    Defendants' Motion for Summary Judgment, **ECF No. 84**, is **GRANTED IN PART.**

   a. Defendants' Motion is **GRANTED** as to Claims 1-6 and 8. Thus, Claims 1-6 and 8 of the Amended Complaint, **ECF No. 12**, are **DISMISSED WITH PREJUDICE**.

   b. Defendants' Motion is **GRANTED** as to Claim 7 against Defendants Wohlpart and CWU. Thus, Claim 7 of the Amended Complaint, **ECF No. 12**, against Defendants Wohlpart and CWU is **DISMISSED WITH PREJUDICE.**

   c. Defendants' Motion is **DENIED** as to Claim 7 against Defendant Erdman.

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 16

2.      Defendants Central Washington University, James Wohlpart, Lucinda Carnell, Sathyanarayanan Rajendran, John Macarthur, Brian McGladrey, Stacy Sleigh-Layman, and Kurt Kirstein are **DISMISSED** from this action.

3.      The case caption shall be **AMENDED** to reflect the dismissal of these defendants.

4.      Within 14 days of the date of this Order the parties shall contact the Courtroom Deputy for a scheduling conference in this case.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** April 1, 2026

_____
REBECCA L. PENNELL
United States District Judge

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING PART**~ 17